IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CARMEN QUARTERMAINE, :

    Plaintiff, :

vs. : CA 11-0142-C

MICHAEL J. ASTRUE, :
Commissioner of Social Security,
                                                    :

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. 636(c), for all proceedings in this Court. (Docs. 21 & 22 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the November 17, 2011 hearing before the Magistrate Judge, it is determined that the

Commissioner's decision denying plaintiff benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to diabetes mellitus, peripheral neuropathy (bilateral-lower extremities), myasthenia gravis, diabetic retinopathy, decreased visual acuity, and migraine headaches. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.**
>
> **2. The claimant did not engage in substantial gainful activity during the period from her alleged disability onset date of January 1, 2005 through her date last insured of December 31, 2007 (20 CFR 404.1571 *et seq.*).**
>
> **3. Through the date last insured, the claimant had the following severe impairments: decreased visual acuity, diabetes mellitus, diabetic retinopathy, peripheral neuropathy, headaches, and obesity. She also had the following non-severe impairments: restless leg syndrome and adjustment disorder with depressed mood (20 CFR 404.1520(c)).**
>
> . . .
>
> **4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**
>
> The claimant's impairment of diabetes is analyzed under listing 9.08. To be found disabled, the claimant would be required to demonstrate that her impairment has resulted in: (A) neuropathy so severe as to cause

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 21 & 22 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

sustained disturbance of gross and dexterous movements of gait and station; or (B) acidosis occurring once every two months as documented by blood chemical tests; or (C) retinitis proliferans resulting in visual efficiency or visual field loss of the severity specified in listings 2.02, 2.03, or 2.04. Although there was some evidence of neuropathy, it was generally mild. In addition, there is evidence of retinopathy but it does not reach the levels specified in listing 2.02, 2.03 or 2.04. There was no objective medical evidence of significant and persistent disorganization of motor functioning, resulting in sustained disturbance of gross and dexterous movements, or gait and station. Furthermore, the record did not document acidosis occurring as often as required of this medical listing.

The claimant's impairments of decreased visual acuity and diabetic retinopathy are analyzed under listing 2.02. To be found disabled, the claimant would be required to demonstrate that her remaining vision in the better eye after best correction is 20/200 or less. There is not any objective medical evidence that indicates the claimant meets this requirement. Therefore, the claimant does not meet the criteria necessary to meet this medical listing.

Because the claimant's severe impairments have not been shown to impose limitations as mentioned in the listings, she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526 []).

**5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity (RFC) to perform a range of light work as defined in 20 CFR 404.1567(b). The claimant has a RFC consistent with Exhibit 18F with the following additional limitations: lift and carry reduced to 20 pounds occasionally and less than 10 pound[s] frequently; stand and walk 6 hours out of an 8-hour work day; sit for 6 hours out of an 8-hour work day; sit/stand option added; limited use of bilateral lower extremities for the operation of foot controls to no more than 2 hours out of an 8-hour work day; unlimited use of upper extremities with the only limitation being the lift and carry limitation; frequently able to climb ramps and stairs; frequently able to perform all the other postural limitations – balancing, stooping, kneeling, crouching, and crawling; never climb[] ropes or scaffolds; no manipulative limitations; limited near and far acuity with respect to basically monocular vision for safety issues; no communicative limitations; avoid reading small print;  avoid hazardous machinery, unprotected heights and environment free of trip**

**hazards; no operation of automotive equipment; mild to moderate pain limitation; and no psychological limitations.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

. . .

The claimant also has migraine headaches for which she first sought treatment in February 2007 from Dr. James D. Geyer, a treating physician. In July 2007, she was admitted to DCH Regional Medical Center with headaches and vision loss in the left eye. While in the hospital, she had a CT head scan, cranial MRI and brain MRI, all of which were normal. The claimant stated that Midrin was effective in controlling her headaches if taken at onset. She was given medications during her stay and after showing improvement was released from the hospital with a prescription for Midrin (Exhibit 6F).

The claimant sought further treatment from Alabama Neurology & Sleep Medicine from October 2007 to October 2008. During these visits the migraines were characterized as severe with blurry vision; however, the claimant stated consistently that the medications Elavil, Midrin and Topomax did provide her relief (Exhibit 10F and 28F).

In addition, due to the diabetes, the claimant has peripheral neuropathy in her feet and legs. In July 2007 the claimant sought treatment with Dr. Geyer. He noted in his physical exam that she was positive for neuropathic changes in her feet and that her left and right toes were down going. He noted no clubbing or cyanosis. She was prescribed Elavil 100mg (Exhibits 6F and 7F). In her August 2007 and October 2007 follow-up visits with Dr. Geyer, he noted her condition was moderate. Her physical examinations during these visits were unremarkable. She was prescribed Lyrica 50mg (Exhibit 9F).

On September 29, 2008, the claimant was taken to the DCH Regional Medical Center Emergency Room for acute pain in her left lower extremities. She was treated for pain and released the same day (Exhibit 23F).

On October 5, 2008, she was once again admitted to DCH Regional Medical Center due to leg weakness. Upon admission, the claimant rated her pain as 8, on a 1-10 scale, and she was unable to walk. The physical examination revealed no clubbing, cyanosis or edema. She had diffuse giveaway weakness on direct strength testing, but no definite true weakness. Deep tendon reflexes were absent but her strength was 4+/5, which is normal. Her toes were down going. The claimant's condition improved and she was discharged on October 6, 2008 when she was able to ambulate (Exhibit 23F).

On October 15, 2008, the claimant completed an Application for Disability Access Parking Privileges in order to obtain a disability access placard. This application was signed by Dr. Geyer and it was marked that the claimant cannot walk two hundred feet without stopping to rest (Exhibit 27F). This is not consistent with her medical records and daily activities.

The claimant was again admitted to the hospital on November 13, 2008 for leg weakness. The claimant rated her pain as 8, on a 1-10 scale. There were no outward signs of peripheral disease on exam. The claimant was treated for pain during her stay and was discharged on November 14, 2008 after showing improvement (Exhibit 23F).

On February 15, 2009 the claimant once again returned to the DCH Regional Medical Center Emergency Room with lower extremity swelling and pain. The claimant rated her pain as 7, on a 1-10 scale. On February 16, 2009 she was given a lower extremity venous evaluation. The results were normal and there was no evidence of deep venous thrombosis. The claimant was released on February 16, 2009 (Exhibit 23F).

The claimant also sought treatment for peripheral neuropathy from Dr. Tohee J. Kamal on April 29, 2009. Her physical examination was unremarkable, but she did have acute edema in extremities and sensation to microfilament was reduced in both feet. She was given an assessment plan in order to control her diabetes and peripheral neuropathy (Exhibit 22F).

Furthermore, due to her diabetes, the claimant has essentially monocular vision and diabetic retinopathy. She has been in treatment with Tuscaloosa Ophthalmology since 2004 and with Medical Surgical Eye Care since [] 2009. Throughout the claimant's eye treatment she has complained of blurry vision and black spots/shadows. She has had various laser surgeries for cataracts and blurry vision. She has had ptosis since birth, but no limitations are noted due to this condition. Although

the medical record showed that the claimant's vision had consistently decreased over the years, her vision had been consistently recorded around 20/40 with corrective lens. At one of her most recent eye exams dated May 7, 2009 her vision was 20/40 with corrective lens. In addition, she stated during this exam that she could see better in her glasses (Exhibits 1F, 11F, 22F and 25F).

*Great weight* is given to the Residual Functional Capacity Assessment (RFC) from the state agency. ***Although the disability examiner, C. Lee Waldup, is not a physician, he thoroughly reviewed the claimant's medical record and his opinion is consistent with the findings in that record.*** Furthermore, the RFC was completed with input from several state agency physicians (Exhibits 13F, 19F and 20F). However, the undersigned does find that, in light of the claimant's impairments in combination, she has more limitations than those listed in the RFC. The additional limitations are reflected in the RFC listed above and are taken into account in determining the claimant's abilities (Exhibit 18F).

.   .   .

**6.   Through the date last insured, the claimant was capable of performing past relevant work as a unit clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**

The claimant has admitted certain abilities, as previously described, which provide support for part of the residual functional capacity conclusion in this decision.

The claimant worked as a unit clerk which is a light, semi-skilled job. The vocational expert testified that the claimant's job as a unit clerk is a light semi-skilled job as described in the <u>Dictionary of Occupational Titles</u>. Assuming the claimant's residual functional capacity as assessed by the undersigned, the vocational expert testified that a person with the claimant's same education, past relevant work and RFC would be able to perform the requirements of this job.

Therefore, in comparing the claimant's residual functional capacity with the physical and mental demands of the work as a unit clerk, the undersigned, based on the vocational expert's testimony, finds that the claimant is able to perform this work as actually and generally performed.

**7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2005, the alleged onset date, through December 31, 2007, the date last insured (20 CFR 404.1520(f)).**

(Tr. 15, 16-17, 19- 21 & 22-23 (some emphasis supplied).) The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform her past relevant work as a unit clerk, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as

unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

In this case, the plaintiff contends that the ALJ made the following errors: (1) he failed to properly consider the applicability of Listing 9.08(A); and (2) he erred in relying upon and giving great weight to a non-medical source opinion in arriving at his conclusion regarding her RFC. Because the undersigned agrees with the plaintiff that the ALJ improperly gave great weight to the RFC determination of a disability examiner and improperly relied upon that determination in reaching his conclusion regarding the claimant's RFC, there is no need to address the specifics of the other assignment of error raised by Quartermaine. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

Although the claimant bears the burden of demonstrating the inability to return to her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). To this end, because § 404.1520(f) of the Commissioner's regulations requires a review and consideration of a plaintiff's residual functional capacity and the physical and mental demands of the past work before a determination can be made that the plaintiff can perform her past relevant work, *see id.* ("If we cannot make a

---

[2] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

8

determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work. . . . If you can still do this kind of work, we will find that you are not disabled."); *compare id. with* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record[.] . . . We use our residual functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work[.]"), an ALJ's RFC determination must be supported by substantial evidence. *See Moore v. Barnhart,* 405 F.3d 1208, 1213 (11th Cir. 2005) ("[W]e find that the ALJ's determination that Moore retained sufficient RFC to perform some of her past relevant work was supported by substantial evidence."). The ALJ makes this RFC determination by considering the claimant's ability "to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. § 404.1545(a)(4); *compare id. with* § 404.1545(b) ("*Physical abilities*. . . . A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.") *and* § 404.1545(d) ("Some medically determinable impairment(s), such as . . . impairment(s) of vision, . . . and impairment(s) which impose environmental

restrictions, may cause limitations and restrictions which affect other work-related abilities.").

In attempting to establish plaintiff's residual functional capacity and determine whether plaintiff retains the RFC to perform her past relevant work as a unit clerk, the ALJ gave "***great weight***" to the residual functional capacity assessment completed by disability examiner, C. Lee Waldrup (Tr. 21 (emphasis supplied)). Accordance of "great weight" to Waldrup's assessment constitutes an error of law since an RFC assessment completed by a disability examiner is entitled to no weight. *Compare Traylor v. Astrue*, 2010 WL 920114, *5 (M.D. Ala. Mar. 11, 2010) ("The referenced opinion, however, is not that of a physician; it is the opinion of the DDS disability examiner, Karen Wiggins. Her opinion is not, as the Appeals Council apparently believed, entitled to consideration as an expert medical opinion." (internal citation omitted)); *Casey v. Astrue*, 2008 WL 2509030, *4 n.3 (S.D. Ala. June 19, 2008) ("[A]n RFC assessment completed by a disability specialist is entitled to no weight."); and *Bolton v. Astrue*, 2008 WL 2038513, *4 (M.D.Fla. May 12, 2008) ("'An SDM is not a medical professional of any stripe, and' a finding from such an individual is 'entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources.'") *with* 20 C.F.R. § 404.1513(c) (2011) ("At the administrative law judge and Appeals Council levels, and at the reviewing official, administrative law judge, and Decision Review Board levels in claims adjudicated under the procedures in part 405 of this chapter, we will consider residual functional capacity assessments made by State agency medical and psychological consultants, medical and psychological experts . . ., and other program

10

physicians and psychologists to be 'statements about what you can still do' made by non-examining physicians and psychologists based on their review of the evidence in the case record.") & (d)(1)-(4) (describing evidence that may be used from other acceptable medical and non-medical sources but never identifying disability specialists as an acceptable non-medical source); *cf. Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (the opinion of a non-examining, reviewing physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision."). In the absence of Waldrup's RFC assessment, the ALJ's RFC assessment and conclusion that plaintiff can perform her past work as a unit clerk is not supported by substantial evidence, inasmuch as the numerous findings made by Waldrup informed not only the ALJ's RFC determination but, as well, the testimony of the vocational expert ("VE") and the ALJ's determination that plaintiff's RFC allows her to return to her past relevant work as a unit clerk. *Compare* Tr. 17 ("**After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity (RFC) to perform a range of light work as defined in 20 CFR 404.1567(b). The claimant has a RFC consistent with** *Exhibit 18F* **with the following additional limitations: . . . frequently able to climb ramps and stairs; frequently able to perform all the other postural limitations – balancing, stooping, kneeling, crouching and crawling; never climb ropes or scaffolds; no manipulative limitations; limited near and far acuity with respect to basically monocular vision for safety issues; no communicative limitations; avoid reading small print; avoid hazardous machinery, unprotected heights and**

11

**environment free of trip hazards; [and] no operation of automotive equipment[.]"** (some emphasis supplied)) and Tr. 73-74 (VE's testimony that plaintiff could perform her past job as a unit clerk, when posed a hypothetical by the ALJ that included all of the above postural, manipulative, visual, communicative, and environmental noted by the ALJ, and as contained in Exhibit 18F) *with* Tr. 371-376 (relevant pages of RFC assessment by Waldrup which contain postural, manipulative, visual, communicative, and environmental limitations identical to those found by the ALJ).[3] In this regard, the Commissioner cannot be heard to argue that this Court can look to the "input" from several state agency physicians underlying Waldrup's assessment (*see* Tr. 21 (ALJ notation that Waldrup's assessment was due great weight, in part, because it "was completed with input from several state agency physicians.")) as support for the ALJ's ultimate RFC assessment, given Waldrup's failure to include in his assessment, and the ALJ in his hypothetical posed to the VE and upon which the ALJ relies to find that plaintiff can perform her past relevant work as a unit clerk, all of the limitations found by the agency physicians (*compare* Tr. 378 (physical summary by Drs. Callins & Kerr)

---

[3] Thus, the ALJ's assignment of great weight to Waldrup's RFC assessment is not, as the defendant argues, mere harmless error (*see* Doc. 19, at 10 & 11-13). In particular, as specifically pointed out in this opinion, the defendant incorrectly argues that the portions of Waldrup's assessment that were accepted by the ALJ and the remaining evidence in the record do not conflict. Indeed, Waldrup's specific, yet conclusory, rejection of the limitation regarding the handling of objects (*see* Tr. 375)—found not only by a state agency optometrist, Rose Betz (Tr. 348), but, as well, by two state agency physicians, Drs. Callins and Kerr (Tr. 378)—cannot withstand scrutiny since reviewing physicians and a person who deals daily with vision problems, in the undersigned's opinion, would have a much better idea of how such problems would impact an individual's ability to handle objects than would a disability examiner conducting a document review.

*with* Tr. 17 & 72-74) (ALJ's specific RFC assessment which was incorporated into the hypothetical posed to the VE) and Tr. 371-376 (Waldrup's pertinent RFC findings)). More to the point, if it be incumbent upon this Court to consider this evidence, it would also be incumbent upon this Court to consider the additional limitation recognized by a state agency optometrist, Rose Betz, that plaintiff "would have difficulty handling objects as she cannot see them clearly[,]" (Tr. 348), and incorporated into the physical summary by Drs. Callins and Kerr (Tr. 378), thereby begging the question of whether the VE would have indicated plaintiff could perform her past job of unit clerk had this additional limitation been part of the hypothetical posed to the VE (*compare* Tr. 158 (plaintiff's description of her past relevant work as a unit clerk was that it required writing, typing, or handling small objects 6 to 8 hours a day; she had to translate physician orders, chart vital signs, order blood work and x-rays, schedule surgeries, and run errands to the pharmacy or SPD) *with* DOT 245.362-014 ("Prepares and compiles records in nursing unit of hospital or medical facility: Records name of patient, address, and name of attending physician to prepare medical records on new patients. Copies information, such as patient's temperature, pulse rate, and blood pressure from nurses' records onto patient's medical records. Records information, such as physicians' orders and instructions, dietary requirements, and medication information, on patient charts and medical records. Keeps file of medical records on patients in unit. Prepares notice of patient's discharge to inform business office. Requisitions supplies designated by nursing staff. Answers telephone and intercom calls and provides information or relays messages to patients and medical staff. Directs visitors to patients' rooms. Distributes

mail, newspapers, and flowers to patients. Compiles census of patients. . . . May transport patients in wheelchair or conveyance to locations within facility. May key patient information into computer.")). Accordingly, this cause is due to be remanded to the Commissioner of Social Security for further consideration of plaintiff's proper RFC and her ability, at the fourth step of the sequential evaluation process, to perform the requirements of her past relevant work, or, alternatively, her ability, at the fifth step of the sequential evaluation process, to perform other work existing in substantial numbers in the national economy.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 14th day of December, 2011.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**